2025 IL App (1st) 241711

No. 1-24-1711

Opinion filed May 13, 2025

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| GONZALO MONROY-PEREZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 L 2426 |
| | ) | |
| SENTRY SELECT INSURANCE COMPANY, | ) | Honorable |
| | ) | Catherine A. Schneider, |
| Defendant-Appellee. | ) | Judge, presiding. |

PRESIDING JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Justices McBride and Howse concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Gonzalo Monroy-Perez appeals from the circuit court's dismissal of his complaint

seeking underinsured motorist coverage from defendant Sentry Select Insurance Company

(Sentry). The court dismissed plaintiff's complaint as untimely pursuant to section 2-619(a)(5) of

the Code of Civil Procedure (735 ILCS 5/2-619(a)(5) (West 2022)). On appeal, plaintiff argues

that his complaint was timely because the two-year limitations period was tolled by his request for

arbitration and by section 143.1 of the Illinois Insurance Code (215 ILCS 5/143.1 (West 2022)).

Plaintiff also maintains that Sentry is equitably estopped from asserting the limitations period as a

defense. For the following reasons, we reverse and remand this matter for further proceedings consistent with this order.

¶ 2                                    I. BACKGROUND

¶ 3     On September 5, 2019, plaintiff was a passenger in a pickup truck that his employer owned and that his coworker was driving. A vehicle driven by Gregory Vazquez struck the front passenger side of the truck, injuring plaintiff. Sentry provided automobile insurance for plaintiff's employer. For purposes of this appeal, there is no dispute that plaintiff qualifies as an insured under his employer's policy.

¶ 4                              A. Plaintiff's Prefiling Communications with Sentry

¶ 5     Before he filed the complaint that initiated this lawsuit, plaintiff communicated with Sentry regarding his underinsured motorist claim for damages beyond what Vazquez's insurance would cover. During these communications, plaintiff was represented by an attorney, and Sentry was represented by one of its adjusters.

¶ 6     On January 8, 2020, plaintiff sent Sentry a letter that identified the date of loss as September 5, 2019, and stated as follows:

"Please be advised that my firm now represents Gonzalo Monroy for the bodily injuries he sustained in a motor vehicle collision at or near the intersection of Oak Street and Lawn Avenue in Western Springs, Illinois.

Please accept this letter as our official Notice for Uninsured/Underinsured Claim. Kindly advise me immediately if this Notice does not comply with Sentry's notice requirements for this type of claim. In addition, kindly provide me with a complete certified

copy of the policy, including endorsements and the declaration sheet, in effect on the date of loss.

You are also hereby placed on notice of our request for arbitration in this matter. Timothy O'Neil, Esq., will serve as our arbitrator. Mr. O'Neil can be reached at [contact information].

Based on our telephone conversation earlier this afternoon, we both agree to hold this matter in abeyance until the conclusion of our third-party and workers' compensation claim(s)."

¶ 7 Sentry did not respond to this letter. However, on eight occasions between April 2020 and May 2021, Sentry requested updates on plaintiff's medical treatment, medical bills, and proof of his damages.

¶ 8 On July 2, 2021, plaintiff sought Sentry's approval to settle with Vazquez for the limits of his automobile insurance policy "before pursuing the [underinsured motorist] claim against Sentry." On July 16, 2021, Sentry authorized plaintiff to settle for the $100,000 limits of Vazquez's policy.

¶ 9 On July 20, 2021, plaintiff sent a demand letter to Sentry enclosing "medical records, bills, and lost wages for [Sentry's] review of this claim." Plaintiff claimed $547,518.74 in damages, consisting of $500,000 in noneconomic damages such as pain and suffering, $22,666 in medical expenses, and $24,852.74 in lost wages. On August 27, 2021, Sentry requested plaintiff's itemized medical bills. Plaintiff provided them the following day. On September 14, 2021, Sentry inquired about what portion of plaintiff's damages workers' compensation had paid. Plaintiff provided that

information the same day. Plaintiff also provided Sentry with two independent medical examination reports in the fall of 2021.

¶ 10     On November 23, 2022, plaintiff sent Sentry an e-mail stating: "It does not seem as though we are able to come to a resolution. Therefore, I am requesting we continue with the arbitration process." Plaintiff also sent e-mails requesting a copy of the policy and to proceed with arbitration on December 2 and 15, 2022. On December 23, 2022, Sentry's adjuster said he had requested a copy of the policy and "[i]t usually takes a few weeks to receive." On January 24, 2023, plaintiff again requested the policy and to proceed with arbitration.

¶ 11     Sentry provided the policy to plaintiff for the first time on January 25, 2023. Paragraph 3 of the policy's underinsured motorist coverage form governs legal action against Sentry and provides:

"a. No one may bring a legal action against [Sentry] under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

b. Any legal action against [Sentry] under this Coverage Form must be brought within two years after the date of the 'accident.' However, this Paragraph 3.b. does not apply if, within two years after the date of the 'accident':

(1) Arbitration proceedings have commenced in accordance with the provisions of this Coverage Form[.]"

Paragraph 5 governs arbitration and states in relevant part that "[i]f [Sentry] and an 'insured' *** do not agree as to the amount of damages that are recoverable by that 'insured', then the matter may be arbitrated. *** Either party may make a written demand for arbitration."

¶ 12    On February 6, 2023, plaintiff sent Sentry a letter "formally demand[ing]" arbitration and identifying an arbitrator. As of February 22, 2023, Sentry had not responded to that letter.

¶ 13                    B. Complaint, Motion to Dismiss, and Motion to Reconsider

¶ 14    On March 9, 2023, plaintiff filed his complaint against Sentry seeking underinsured motorist coverage for damages in excess of $100,000.

¶ 15    Sentry filed a motion to dismiss pursuant to section 2-619(a)(5). Relevant here, Sentry argued that, pursuant to the policy's two-year limitations period, plaintiff had to file his complaint by September 5, 2021, but did not do so until March 9, 2023. Sentry acknowledged that the policy included a "tolling exception" if plaintiff requested arbitration within two years of the accident but argued that plaintiff did not request arbitration until December 15, 2022, more than three years after the accident.

¶ 16    In response, plaintiff argued that he requested arbitration on January 8, 2020, approximately four months after the accident and before the limitations period expired.

¶ 17    Sentry's reply acknowledged that plaintiff requested arbitration on January 8, 2020. However, the policy permitted arbitration only if the parties did not agree as to the amount of plaintiff's damages. Sentry contended that, as of January 8, 2020, the parties had not even discussed damages, so plaintiff's request for arbitration on that date was ineffective. According to Sentry, the first disagreement as to damages arose on July 20, 2021, when plaintiff sent his demand letter. Therefore, plaintiff's first effective arbitration demand occurred on December 15, 2022, which was beyond the two-year limitations period.

¶ 18    The circuit court granted Sentry's motion to dismiss. Quoting *Willis v. United Equitable Insurance Co.*, 2017 IL App (1st) 162308, ¶ 20, the court explained that a " 'party sufficiently

commences arbitration if their request or demand for arbitration is unequivocal and is made according to the terms of the policy within the limitations period set forth therein.' " The court found that plaintiff's "January 8, 2020 arbitration demand was not made according to the terms of the policy because no disagreement as to damages had arisen. Plaintiff first ma[de] an arbitration demand after the disagreement on December 15, 2022—approximately three months [*sic*] after the accident." We assume the court meant "approximately three years," not "three months." In any event, the court found that plaintiff's complaint was time-barred and granted the motion to dismiss.

¶ 19     Plaintiff filed a motion to reconsider. He argued that the policy's arbitration provision did not require the parties to actively *dis*agree about damages for arbitration to be available; rather, arbitration was available so long as the parties had not *already agreed* as to the amount of damages. Plaintiff also contended that his arbitration demand of January 8, 2020, complied with the policy as best it could because he did not have a copy of the policy at that time.

¶ 20     In addition, plaintiff's motion to reconsider raised two new legal theories. First, plaintiff argued that Sentry was equitably estopped from asserting the limitations period because Sentry (1) withheld the policy from him for more than three years despite his requests for it, (2) never informed him that his January 8, 2020, arbitration request did not comply with the policy, and (3) never told him that it did not agree with the damages he claimed in his demand letter. Plaintiff's second new theory was that section 143.1 of the Insurance Code tolled the limitations period because he provided Sentry with proof of loss on July 20, 2021.

¶ 21     In response, Sentry argued that plaintiff's motion to reconsider was improper because it did not identify a change in the law, newly discovered evidence, or errors by the circuit court in

applying existing law. Sentry also noted that plaintiff failed to raise his arguments regarding estoppel and section 143.1 in response to the motion to dismiss.

¶ 22    The trial court denied plaintiff's motion to reconsider. The court found that the motion was "patently improper" because it raised arguments plaintiff could have raised in response to Sentry's motion to dismiss. Therefore, the court did not consider plaintiff's arguments regarding estoppel and tolling under section 143.1. The court reiterated that plaintiff's "January 8, 2020, arbitration demand was not made according to the terms of the policy because no disagreement as to damages had arisen. Plaintiff's first arbitration demand after the disagreement was made on December 15, 2022."

¶ 23    Plaintiff timely appealed.

¶ 24                                    II. ANALYSIS

¶ 25    Plaintiff argues that his complaint was timely because the two-year limitations period was tolled by his demand for arbitration and by section 143.1 of the Insurance Code. He also maintains that Sentry is estopped from asserting the limitations period as a defense.

¶ 26                                    A. Forfeiture

¶ 27    Before we consider the merits of this appeal, we must address the fact that plaintiff's motion to reconsider raised two legal theories for the first time in this case: estoppel and tolling pursuant to section 143.1 of the Insurance Code. Plaintiff raises those arguments in this appeal as well.

¶ 28    We could find that plaintiff forfeited these arguments by raising them for the first time in his motion to reconsider. The purpose of a motion to reconsider is to bring to a court's attention newly discovered evidence, changes in the law, or errors in the court's application of existing law.

*River Plaza Homeowner's Ass'n v. Healey*, 389 Ill. App. 3d 268, 280 (2009). A motion to reconsider "is not the place to raise a new legal theory." (Internal quotation marks omitted.) *Id.* Therefore, a party may forfeit legal theories by raising them for the first time in a motion to reconsider. *Id.*; see *A.A. v. Nita A.*, 2023 IL App (1st) 230011, ¶ 35 (citing *Zander v. Carlson*, 2020 IL 125691, ¶ 34).

¶ 29    However, we do not find forfeiture for two reasons. First, in this appeal, Sentry does not contend that plaintiff has forfeited these arguments. A party can forfeit the opposing party's forfeiture of an argument by failing to raise it. *People v. Skillom*, 2017 IL App (2d) 150681, ¶ 24 (citing *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003)). That has occurred here.

¶ 30    In addition, both parties' legal theories shifted throughout briefing in the circuit court. Sentry's motion to dismiss argued that the filing of plaintiff's complaint and his request for arbitration were untimely because both occurred after September 5, 2021, when the two-year limitations period expired. Plaintiff's response stated that he first requested arbitration on January 8, 2020, within the two-year limitations period. Sentry's reply acknowledged plaintiff's January 8, 2020, arbitration request but argued that arbitration was not available at that time because the parties did not disagree about the amount of plaintiff's damages. Plaintiff only then raised his arguments regarding estoppel and section 143.1 in his motion to reconsider.

¶ 31    Forfeiture is a limitation on the parties and not on the reviewing court. *Pinske v. Allstate Property & Casualty Insurance Co.*, 2015 IL App (1st) 150537, ¶ 19. We review the dismissal of plaintiff's complaint *de novo* (see *O'Toole v. Chicago Zoological Society*, 2015 IL 118254, ¶ 16) and the record in this case is straightforward. Therefore, we decline to find forfeiture and will

address the merits of this appeal "in order to achieve a just result and maintain a sound and uniform body of precedent." See *Pinske*, 2015 IL App (1st) 150537, ¶ 19.

¶ 32 That said, nothing in this order should be construed as encouraging the practice of raising new legal theories in a motion to reconsider. That is improper. *River Plaza Homeowner's Ass'n*, 389 Ill. App. 3d at 280. If a party wishes to respond to arguments in the opposing party's reply, the proper course of action is to request leave to file a sur-reply. See, *e.g.*, *M&T Bank v. Mallinckrodt*, 2015 IL App (2d) 141233, ¶ 47; *Daley v. Alden-Town Manor Rehabilitation & Health Care Center, Inc.*, 2022 IL App (1st) 211619-U, ¶ 18.

¶ 33                                B. Limitations Period

¶ 34 The circuit court dismissed plaintiff's complaint pursuant to section 2-619(a)(5), which provides for the involuntary dismissal of a complaint when "the action was not commenced within the time limited by law." See 735 ILCS 5/2-619(a)(5) (West 2022). We review the dismissal of a complaint pursuant to section 2-619(a)(5) *de novo*. *O'Toole*, 2015 IL 118254, ¶ 16. *De novo* review means that we perform the same analysis as the circuit court. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 35 This appeal involves the interplay of two provisions of the policy's underinsured motorist coverage form: the limitations period of paragraph 3 and the arbitration provision of paragraph 5. When interpreting the language of an insurance policy, our primary goals are to determine the parties' intent in agreeing to the terms of the policy and to give effect to that intent, as expressed by the language of the policy. *MemberSelect Insurance Co. v. Luz*, 2016 IL App (1st) 141947, ¶ 21 (citing *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005)). We construe the policy as a whole and consider the type of insurance provided and the purposes of the contract.

*Id.* (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993)).

If the language of the policy is unambiguous, we apply it as written unless it violates public policy.

*Id.* ¶ 22. If the language of the policy is ambiguous, we construe it liberally in favor of coverage.

*Id.* Policy language is ambiguous if it is susceptible to more than one reasonable interpretation, but

we will not strain to find ambiguity. *Id.*

¶ 36    In this case, the applicable limitations period comes from the policy as opposed to statutory

or case law. A contractual provision requiring a party to file suit within a specific time is valid so

long as it is reasonable even if the general statute of limitations is longer. *15th Place Condominium*

*Ass'n v. South Campus Development Team, LLC*, 2014 IL App (1st) 122292, ¶ 27. That is, "parties

to a contract may agree upon a shortened contractual limitations period to replace a statute of

limitations, so long as it is reasonable." (Internal quotation marks omitted.) *Id.* In this case, neither

party contends that the policy's two-year limitations period is unreasonable.

¶ 37    The policy requires that "[a]ny legal action against [Sentry] *** must be brought within

two years after the date of the accident." This limitations period unambiguously required plaintiff

to file his complaint against Sentry no later than September 5, 2021. Plaintiff filed his complaint

on March 9, 2023. Therefore, plaintiff's complaint was untimely and barred by the policy's

limitations period.

¶ 38    However, the policy further provides that the two-year limitations period "does not apply

if, within two years of after the date of the accident," "[a]rbitration proceedings have commenced

in accordance with the provisions of" the policy. (Internal quotation marks omitted.). The policy

does not define how arbitration proceedings commence. This court has held that, "to commence

arbitration proceedings, an insured's letter must make an unequivocal demand for arbitration and

name the arbitrator on behalf of the insured consistent with the policy's provision." *Rein v. State Farm Mutual Automobile Insurance Co.*, 407 Ill. App. 3d 969, 975 (2011); see *Willis*, 2017 IL App (1st) 162308, ¶ 20 ("[A] party sufficiently commences arbitration if their request or demand for arbitration is unequivocal and is made according to the terms of the policy within the limitations period set forth therein."). Plaintiff's January 8, 2020, letter to Sentry stated, "You are also hereby placed on notice of our request for arbitration in this matter. Timothy O'Neil, Esq., will serve as our arbitrator." That letter was an unequivocal request for arbitration that named the arbitrator on plaintiff's behalf. See *Rein*, 407 Ill. App. 3d at 975. Sentry's brief claims that "[p]laintiff did not indicate at any point that he was preparing to initiate arbitration or litigation." That is inaccurate. Plaintiff's letter of January 8, 2020, expressly requested arbitration.

¶ 39    However, plaintiff's January 8, 2002, arbitration request was not "according to the terms of the policy." See *Willis*, 2017 IL App (1st) 162308, ¶ 20. The policy's arbitration provision states that, "[i]f [Sentry] and an insured *** *do not agree* as to the amount of damages that are recoverable by that insured, then the matter may be arbitrated." (Emphasis added and internal quotation marks omitted.) "Agree" means "to concur in (something, such as an opinion)." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/agree (last visited May 1, 2025) [https://perma.cc/3WX5-5ZP6]. Therefore, not agreeing means having a difference of opinion.

¶ 40    Sentry could not have had an opinion about the amount of plaintiff's damages when it received his letter of January 8, 2020. That letter was how Sentry first learned of plaintiff's underinsured motorist claim, and the letter conveyed no information about plaintiff's damages beyond claiming that he sustained "bodily injuries." The letter certainly did not set forth any

claimed amount of damages. Even if plaintiff had an opinion about his damages on January 8, 2020, his opinion could not have differed from Sentry's because Sentry had no opinion at all. Therefore, we cannot say the parties "d[id] not agree as to the amount of damages that [were] recoverable" on January 8, 2020. Pursuant to the policy, arbitration was not available at that time, so plaintiff's attempt to request arbitration on January 8, 2020, was ineffective.

¶ 41     The next time plaintiff requested arbitration was on November 23, 2022. That arbitration request occurred after plaintiff issued his demand letter setting out his damages. But November 23, 2022, was after the two-year limitations period expired on September 5, 2021, so that arbitration request was untimely. Therefore, plaintiff did not request arbitration or file a complaint against Sentry within the two-year limitations period of the policy, so his complaint was untimely.

¶ 42                                    C. Estoppel

¶ 43     Nevertheless, plaintiff argues that Sentry is estopped from asserting the two-year limitations period as a defense to his complaint. To establish estoppel in an insurance context, the plaintiff must show that (1) the acts or statements of the insurer misled him, (2) he relied on those representations, (3) his reliance was reasonable, and (4) he suffered prejudice because of his reliance. *Safeway Insurance Co. v. Ebijimi*, 2018 IL App (1st) 170862, ¶ 51. However, the plaintiff does not have to show that the insurer intended to mislead him. *Id.*

¶ 44     We find that estoppel applies because Sentry withheld the policy from plaintiff until after the limitations period expired despite plaintiff's timely request for a copy of the policy. Plaintiff apparently did not have access to the policy because he was not the policyholder; his employer was. Plaintiff requested a copy of the policy from Sentry on January 8, 2020, approximately four months after the accident and well within the limitations period. Had Sentry provided the policy

at that time, plaintiff would have known that by September 5, 2021, he had to file suit or request arbitration based on the parties' nonagreement regarding damages. But Sentry did not provide the policy in response to plaintiff's January 8, 2020, letter. Sentry also never informed plaintiff of the two-year limitations period. Furthermore, Sentry never advised plaintiff that his January 8, 2020, arbitration request was ineffective because the policy allowed arbitration only when the parties did not agree about damages. Plaintiff's letter of January 8, 2020, asked Sentry to "advise [him] immediately if this Notice does not comply with Sentry's notice requirements for this type of claim." Sentry ignored that request.

¶ 45    Over the next three years, Sentry regularly communicated with plaintiff about his claim. Sentry gave plaintiff a copy of the policy for the first time on January 25, 2023. That was more than 16 months after the limitations period expired and more than 3 years after plaintiff first requested the policy.

¶ 46    Sentry's conduct concealed the limitations period and the prerequisites for requesting arbitration from plaintiff. Plaintiff could not comply with the two-year limitations period if he had no reason to know that it existed, and he could not know that it existed unless he obtained and reviewed the policy. Given Sentry's ongoing communications well after the limitations deadline passed, plaintiff may reasonably have believed that the applicable limitations period was the common-law statute of limitations, which is 10 years. See *Country Preferred Insurance Co. v. Whitehead*, 2012 IL 113365, ¶ 29 ("In the absence of specific and clear provisions limiting the period within which suits must be filed, the 10-year statute of limitations for actions on written contracts is applicable to actions by insureds against their insurers based on insurance policies.");

see also *Shelton v. Country Mutual Insurance Co.*, 161 Ill. App. 3d 652, 656 (1987) (10-year-statute of limitations applies to uninsured motorist claims).

¶ 47    Similarly, without the policy, plaintiff could not have known that his January 8, 2020, arbitration request was ineffective. See *Yandell v. Church Mutual Insurance Co.*, 274 Ill. App. 3d 828, 833 (1995) (finding estoppel where the "plaintiff made repeated requests for a copy of the policy, but defendant never furnished a complete copy of the policy until after the suit was filed," so the "plaintiff did not know of the details of the arbitration provision"). Based on what plaintiff knew at the time, his January 8, 2020, arbitration request was valid because it made an unequivocal demand for arbitration and named an arbitrator on his behalf. See *Rein*, 407 Ill. App. 3d at 975. Therefore, plaintiff has established the first element of estoppel.

¶ 48    As to the second and third elements of estoppel, we find that plaintiff reasonably relied on Sentry's conduct. Sentry's actions shortly before and after the limitations period expired on September 5, 2021, are telling. Approximately two months before the limitations period expired, Sentry approved plaintiff's settlement with Vazquez. Approximately one week before the limitations period expired, Sentry responded to plaintiff's demand letter by requesting itemized medical bills, which plaintiff promptly provided. Nine days after the limitations period expired, Sentry inquired about what portion of plaintiff's medical bills and lost wages workers' compensation had paid. From plaintiff's point of view, everything about Sentry's behavior suggested that Sentry was acting in good faith to evaluate and perhaps settle his claim. Nothing about Sentry's behavior suggested that the most important deadline in the case was approaching or had just passed.

¶ 49    Finally, plaintiff was prejudiced by Sentry withholding the policy and keeping him unaware of the limitations period. Plaintiff also did not know that his initial arbitration request was invalid. Sentry's conduct resulted in plaintiff filing an untimely complaint, which was dismissed on Sentry's motion. Therefore, plaintiff has established all four elements of estoppel.

¶ 50    *Salloum Foods & Liquor, Inc. v. Parliament Insurance Co.*, 69 Ill. App. 3d 422 (1979), is an older case, but its reasoning applies here. In *Salloum Foods*, the plaintiff's store was robbed, and he promptly notified his insurance provider of the loss. *Id.* at 430-31. While the plaintiff was communicating with his insurer, he sold the store, and the insurance policy was cancelled. *Id.* at 431. What was apparently the only copy of the policy was sent back to the insurer. *Id.* Shortly before the policy's limitations period expired, the plaintiff sent a letter to the insurer requesting a copy of the policy, but the insurer claimed that it did not have a copy of the policy and directed the plaintiff to the claims adjuster. *Id.* The plaintiff contacted the claims adjuster, who did not respond. *Id.* The plaintiff sued the insurer approximately one month after the limitations period expired. *Id.* The circuit court granted summary judgment in the insurer's favor based on the plaintiff's untimely complaint, and this court reversed. *Id.* at 423, 427. We found that the insurer was equitably estopped from asserting the limitations period as a defense to the plaintiff's lawsuit due to its refusal to produce the policy to the plaintiff when he requested it. *Id.* at 433. The court explained:

> "As a simple matter of fairness and logic, and in keeping with the modern view that an insurer must deal fairly and in good faith with its insureds, we conclude that Salloum Foods had a right to a copy of its entire insurance policy. [The insurer's] unjustified and unexplained refusal to provide Salloum Foods with a copy of the policy, occasioned

Salloum Foods' delay in filing suit. Consequently, we conclude that [the insurer] is equitably estopped from raising the limitation provision as a defense to Salloum Foods' action on the policy." *Id.*

¶ 51 That reasoning applies to this case. Plaintiff, as an insured under his employer's automobile insurance policy with Sentry, had a right to timely obtain a copy of the entire insurance policy. Sentry's unjustified and unexplained refusal to provide plaintiff with the policy until more than a year after the limitations period expired resulted in plaintiff's untimely filing of his complaint. Therefore, as in *Salloum Foods*, Sentry is estopped from raising the limitations period as a defense to plaintiff's lawsuit.

¶ 52 Sentry does not claim that it gave plaintiff a copy of the policy prior to January 25, 2023. Rather, Sentry contends that it was not required to give plaintiff a copy of the policy because he was not the first named insured; his employer was. Sentry cites section 143.10a of the Insurance Code (215 ILCS 5/143.10a (West 2022)) in support of this argument. But nothing in that section permits an insurer to ignore an insured's express request for a copy of the policy. Even if Sentry's interpretation of section 143.10a was correct, Sentry never told plaintiff that it would not give him a copy of the policy or that he could obtain the policy from his employer. To the extent Sentry suggests that the Insurance Code did not *allow* Sentry to give plaintiff the policy because he was not the first named insured, we observe that Sentry ultimately *did* produce the policy to plaintiff. Sentry simply waited to do so until after the limitations period expired. That conduct was contrary to the purpose of the Insurance Code, which "is to prevent an insurance company from sitting on a claim, allowing the limitation period to run and depriving the plaintiff of the opportunity to

litigate h[is] claim in court." See *Burress-Taylor v. American Security Insurance Co.*, 2012 IL App (1st) 110554, ¶ 18.

¶ 53    Sentry also cites section 143.33 of the Insurance Code, which allows an insurer to post its policy online so long as the policy is "easily accessible to the insured." 215 ILCS 5/143.33 (West 2022). Sentry claims that, because plaintiff could have obtained the policy via Sentry's online portal, Sentry fulfilled its obligation to disclose the policy to him as an insured. We disagree. Section 143.33 does not state that simply posting an insurance policy online fulfills an insurer's obligation to produce the policy when an insured party specifically requests it. On the contrary, that section of the Code states that "[n]othing in this Section affects the timing or content of any disclosure or other document required to be provided or made available to any insured under any statute, rule, regulation, or rule of law." *Id.* § 143.33(e). Also, Sentry never directed plaintiff to its online portal. Even if Sentry did, plaintiff may not have been able to access the portal anyway. Sentry's brief claims that plaintiff's employer, not plaintiff himself, "would have had the primary access to manage the policy online."

¶ 54    Sentry next argues that "Illinois courts have consistently rejected estoppel claims based *solely* on ongoing claims discussions [or] requests for additional information" (emphasis added) and that " 'the mere pendency of negotiations conducted in good faith is insufficient to give rise to estoppel.' " (quoting *Viirre v. Zayre Stores, Inc.*, 212 Ill. App. 3d 505, 515 (1991)[1]). That may be, but our finding of estoppel is not based solely on the fact that Sentry regularly communicated or "negotiated" with plaintiff. Our finding of estoppel is based chiefly on the fact that Sentry did

---

[1]Sentry's brief mistakenly attributes this quote to *Foamcraft, Inc. v. First State Insurance Co.*, 238 Ill. App. 3d 791, 795 (1992).

not provide the policy or disclose the limitations period or arbitration provisions until long after the limitations period had expired despite plaintiff's timely and specific request for that information.

¶ 55 Sentry also contends that estoppel requires an affirmatively misleading act or statement by the insurer. But our supreme court has recognized that "[e]stoppel may arise from silence as well as words." (Internal quotation marks omitted.) *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 314 (2001). Estoppel by silence occurs when one party is aware of the facts and the other party is not. *Boyer v. Buol Properties*, 2014 IL App (1st) 132780, ¶ 72. When Sentry received plaintiff's letter of January 8, 2020, it knew that (1) the limitations period would expire on September 5, 2021, and plaintiff likely did not know that, (2) plaintiff's arbitration request was invalid under the terms of the policy, which plaintiff also did not know, and (3) plaintiff did not have a copy of the policy, which would reveal the first two items to him. Sentry's response was to withhold the policy, wait until well after the limitations period expired, and then give plaintiff a copy of the policy. The January 8, 2020, letter gave Sentry both the duty and the opportunity to provide the policy to plaintiff, but Sentry did not do so. See *Geddes*, 196 Ill. 2d at 314. That is estoppel by silence.

¶ 56 Finally, Sentry argues that plaintiff unreasonably waited for three years to file his complaint or to "take any action to preserve his legal rights" despite having the ability to do so. We disagree that plaintiff took no action to preserve his legal rights. Within the two-year limitations period, plaintiff requested both arbitration and a copy of the policy. It is true that plaintiff could have sued Sentry before the limitations period expired on September 5, 2021, regardless of what Sentry did or did not do in response to his January 8, 2020, letter. But plaintiff's

decision not to file his complaint between January 8, 2020, and September 5, 2021, was not unreasonable. Plaintiff did not know when the limitations period expired or that his initial arbitration request was invalid under the policy. This lack of knowledge was due to Sentry's failure to give plaintiff a copy of the policy. Furthermore, it would be irrational to hold that an insured can protect his rights *only* by simultaneously suing his insurer *and* seeking arbitration, particularly when the insured does not even have the governing insurance policy. That would defeat the purpose of arbitration as a form of alternative dispute resolution.

¶ 57    As the *Salloum Foods* court explained:

> "[The insurance company's] suggestion, that Salloum Foods should have immediately filed suit and obtained a copy of its policy through discovery, lacks merit. Salloum Foods requested and had a right to a return of its policy in order that it could ascertain, upon an informed basis, whether its insurance claim merited litigation." *Salloum Foods*, 69 Ill. App. 3d at 433.

The same is true here. Sentry had no reasonable basis for ignoring plaintiff's January 8, 2020, request for the policy. Accordingly, based on the record before us, we find that Sentry is equitably estopped from asserting the limitations period as a defense to plaintiff's complaint.

¶ 58    To be clear, we do not suggest that Sentry had a duty to interpret the policy for plaintiff or advise him how to proceed. See *Foamcraft, Inc. v. First State Insurance Co.*, 238 Ill. App. 3d 793-94 (1992) ("The insured cannot blame the insurance company for its failure to read the policy to discover the requirements for bringing suit. It is not the duty of the insurer to inform the insured of his duties."). But Sentry could not withhold the policy from plaintiff despite his request allowing him no chance to even read the policy, particularly when Sentry continued its ongoing

communications with plaintiff and gave him no inkling about the limitations period or prerequisites for requesting arbitration.

¶ 59    Because we find that Sentry is estopped from asserting the limitations period, we need not address plaintiff's arguments regarding section 143.1 of the Insurance Code.

¶ 60                                III. CONCLUSION

¶ 61    For the foregoing reasons, we reverse the dismissal of plaintiff's complaint and remand this matter for further proceedings consistent with this opinion.

¶ 62    Reversed and remanded.

*Monroy-Perez v. Sentry Select Insurance Co.*, 2025 IL App (1st) 241711

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-L-2426; the Hon. Catherine A. Schneider, Judge, presiding. |
| **Attorneys for Appellant:** | Shana A. O'Grady, of Cray Huber Horstman Heil & VanAusdal LLC, of Chicago, Roberto Acevedo, of Acevedo Law, Inc., of Carpentersville, and Matthew D. Robinson, of Geneva, for appellant. |
| **Attorneys for Appellee:** | Jon P. Malartsik and Harry L. Durden, of Kopka Pinkus Dolin, PC, of Chicago, for appellee. |